K. I. Kline, D. C. and Harry W. Jensen, D. C., Plaintiffs-Appellants, v. Harold O. Swank, Director of the Department of Public Aid, Defendant-Appellee.

Gen. No. 10,542.

Fourth District.

August 20, 1964.

Drach, Terrell & Deffenbaugh, of Springfield, for appellants.

William G. Clark, Attorney General, of Springfield (Madalyn Maxwell, Assistant Attorney General, of counsel), for appellee.

DOVE, P. J.

This is an appeal by the plaintiffs from a judgment of the Circuit Court of Sangamon County, rendered in an action for a declaratory judgment, which dismissed, at their costs, their complaint.

The complaint consisted of two counts. In count one, K. I. Kline alleged that he was a duly licensed chiropractor under the provisions of the Medical Practice Act of Illinois, and has been practicing since June 2, 1950, with offices in Bradley, Illinois; that, as such, he is licensed to treat human ailments without the use of drugs or medicine and without operative surgery.

This count then alleged that according to designated provisions of the Public Assistance Code, the Public Aid Commission may provide services to recipients because of illness or disability, and charged that Nancy Bishop of Kankakee County, was, on October 29, 1962, a qualified recipient of Public Aid, and was receiving public assistance, and in need of services for her disability and illness, and that Dr. Kline, the plaintiff, provided such treatment without drugs or operative surgery, and made a charge for such treatment. It was then alleged that the plaintiff was, on November 28, 1962, notified, by the Superintendent of Public Aid of Kankakee County, that payment could not be made to him for chiropractic services, and that the Department refused to pay therefor, and that this refusal was based on Rule 2.02 of Article II of the Rules and Regulations of the Illinois Public Aid Commission, which, in part, provides for the payment for services "only to practitioners licensed to practice medicine in all of its branches, provided that payment for services rendered to a specific recipient by a practitioner who has a limited license may be authorized in only those instances when the practitioner's services are recommended for that recipient by a physician licensed to practice medicine in all of its branches, and/or by the County Medical Advisory Committee."

This count concludes by charging that this rule is unreasonable, arbitrary and discriminatory, and deprives plaintiff of a property right other than by due process of law, and is therefore illegal and void. The

prayer of the complaint is for a judgment declaring the portion of said Rule 2.02, as above set forth, unconstitutional, void and ineffective, and for an order restraining defendant from promulgating any rule or regulation that discriminates against the person licensed to treat human ailments without the use of drugs and operative surgery, and which would deprive the recipient of such services when such recipient desires the services.

The second count of the complaint is substantially the same as the first count, and prays for the same relief. In the second count, however, the plaintiff is Harry W. Jensen, who has offices in Sterling, Illinois, and who is a licensed chiropractor, and has been since May 23, 1952. In this count it was alleged that, on May 4, 10, 13, 21 and 24, 1963, Lillian Wescott was a qualified recipient of public assistance in Whiteside County, Illinois, and on these days she was in need of services for her illness, and that Dr. Jensen provided these treatments without the use of drugs or operative surgery. This count goes on to charge that on July 1, 1963, the plaintiff was notified by the Superintendent of Public Aid of Whiteside County, that the Department had made no provisions for the payment of services by a chiropractic physician.

Attached to count I of the complaint was a copy of a notice dated November 28, 1962, signed by the Superintendent of Public Aid of Kankakee County, informing plaintiff that payment for the chiropractic services he rendered Nancy Bishop could not be made, and attached to count II was a copy of a statement by the Superintendent of Public Aid in Whiteside County, advising the plaintiff in count II that the Department makes no provision for payment of the service rendered by Dr. Jensen to Lillian Wescott.

The defendant answered, admitting many of the allegations of both counts of the complaint, and deny-

ing others. The defendant also filed an affirmative defense, to which replies were filed, and the cause was submitted to the court upon a stipulation of the parties.

It was stipulated that this proceeding concerns an actual controversy, and that the defendant is the Director of the Department of Public Aid of this State; that plaintiff, Dr. Kline, is a chiropractic physician, duly licensed by the State of Illinois to treat human ailments without the use of drugs or medicines and without operative surgery, and has been practicing his profession since June 2, 1950, and has his offices in Bradley, Illinois; that on and before October 20, 1962, Nancy Bishop was a qualified recipient in Kankakee County, Illinois, and receiving Aid to Dependent Children, and was in need of services for her illness or disability, and had complied with the terms and rules of the Department of Public Aid by notifying Dr. Kline that she was a recipient of Aid to Dependent Children, and that Dr. Kline provided treatment for her ailment without the use of drugs or operative surgery; that Dr. Kline made a charge for his services in accordance with the terms and provisions of the Public Assistance Code, but did not comply with Rule 1.03 and Rule 2.02 of the State Department of Public Aid, and it was by virtue of these rules that the Public Aid Commission refused to pay for the services rendered by Dr. Kline. The stipulation was the same with reference to Dr. Jensen and his treatment of Lillian Wescott, and that he had complied with the provisions and terms of the Public Assistance Code, except he, too, did not comply with the provisions of either said Rule 1.03 or Rule 2.02. It was further stipulated that the sole and only question presented for determination is whether these rules are valid and reasonable, or whether they are unreasonable and void.

The Medical Practice Act provides that no person shall practice medicine, or any of its branches, or midwifery, or any system or method of treating human ailments without the use of drugs or medicine, and without operative surgery, without a valid, existing license so to do. (Ill Rev Stats 1963, c 91, § 2). Section three (3) of this Act provides that in order to receive such a license a person must pass an examination of his qualifications therefor, by and satisfactorily to, the Department of Registration and Education. Section five (5) of this Act sets forth the minimum standards of professional education before a person will be permitted to take an examination for the practice of medicine in all its branches, and for the practice of any system or method of treating human ailments without the use of drugs or medicines and without operative surgery. Section seven (7) provides that all examinations shall be conducted under rules and regulations prescribed by the Department, and section eight (8) has to do with the examination of applicants who seek to practice medicine in all its branches, and section nine (9) with those who seek to practice without the use of drugs or medicine and without operative surgery, and provides that the examination of such applicants "shall be the same as required of applicants who seek to practice medicine in all of its branches, excepting therefrom materia medica, therapeutics, surgery, obstetrics, and theory and practice." Section eleven (11) of this Act provides, among other things, that every applicant successfully passing his examinations shall be entitled to an appropriate license, one of which is a license to practice medicine in all of its branches, and another is a license to treat human ailments without the use of drugs or medicines and without operative surgery, such a license to be specifically restricted by its terms to the practice of the system or method which he

specifically designated in his application. (Ill Rev Stats 1963, c 91, § 11).

The Public Assistance Code of Illinois provides that whenever services are required because of illness or disability of recipients, the Department of Public Aid may provide for the services of persons licensed under the Medical Practice Act, whether under a general or limited license, subject to the limitation that the person licensed shall render only such services as are permitted by the terms of his license. (Ill Rev Stats 1963, c 23, § 502). And, in addition to the powers, duties and functions vested in it by the Public Assistance Code, or by other laws of the state, the State Department of Public Aid has the power to make all the rules and regulations, and take such action as may be necessary or desirable for carrying out the provisions of the Public Assistance Code (Ill Rev Stats c 23, § 202.8), and wherever services are required in this state because of illness or disability of recipients, the State Department may provide for the services of persons licensed under the Medical Practice Act, whether under a general or limited license, subject only to the limitation that the person licensed or registered shall render only such services as are permitted by the terms of his license or registration. (Ill Rev Stats 1963, c 23, § 603, 6–3).

The record discloses that pursuant to the provisions of the Public Assistance Code, the Department of Public Aid has adopted the following rules and regulations:

Rule 1.02:

"Recipients are eligible for essential care, services, and supplies when these are: (1) required by a recipient's condition due to illness, infirmity or disability; (2) recommended by a qualified practitioner; (3) furnished in accordance with the Commission's Quality, Quantity and Cost

Standards; and (4) when payment cannot be made by the recipient or his relatives in his behalf, and the required care is not available to him from other sources without charge."

Rule 1.03:

"The cost of medical care is recognized as an essential expenditure for assistance recipients when the need for the care has been verified by a physician (M.D.) or doctor of osteopathy (D.O.) licensed to practice medicine in all its branches, or by a licensed dentist (D.D.S.).

"It shall be understood that wherever the term 'physician' is used in any Commission Rules and Regulations hereafter, this term includes doctors of osteopathy licensed to practice medicine in all its branches.

"The cost of care given by a practitioner other than a physician licensed to practice medicine in all its branches or a licensed dentist shall be recognized as an essential expenditure in those instances, and only in those instances, when such services are recommended by a physician or by the County Medical Advisory Committee."

Rule 2.02:

"The Commission's Quality Standard provides for payment for services only to practitioners licensed to practice medicine in all its branches; Provided that payment for services rendered to a specific recipient by a practitioner who has a limited license may be authorized in only those instances when that practitioner's services are recommended for that recipient by a physician, licensed to practice medicine in all its branches, and/or by the County Medical Advisory Board."

155

Counsel for Appellants argue that, as licensed chiropractors, Appellants are, by statute, authorized to treat recipients of Public Aid, but under the rules and regulations of the Department of Public Aid, before they can receive pay for their services, such rendered service must have been recommended for the recipient by a physician licensed to practice medicine in all its branches, or by the County Medical Advisory Board. This requirement, that their service must be recommended for the recipient, insists counsel, has no basis in reason or logic, is discriminatory and should be declared invalid.

The theory of Appellee is that the Department is expending money for charitable purposes; that the requirement of education and examination in order to obtain a license, such as held by Appellants, is limited and restricted and does not embrace the fields of materia medica, therapeutics, surgery, obstetrics and theory and practice; that the Department has a discretion with reference to whom payments for services to recipients shall be made, and that its rules and regulations set forth standards and requirements which are not capricious or arbitrary, but are logical and reasonable, and therefore valid.

The Legislature expressly granted to the State Department of Public Aid the power to make all rules and regulations as may be desirable or necessary in order to carry out the provisions of the Public Assistance Code. The law provides that whenever recipients required services of persons holding a general or limited license under the Medical Practice Act, the State Department may provide such services (Ill Rev Stats 1963, c 23, § 603, 6–3).

The Department under this express authorization adopted the rule complained of. The statute permits, but does not require, the Department to provide medical services to recipients. The Department

156.

must determine what treatment or services a recipient may require. By its regulations it has provided that a person holding an unlimited medical license, or the County Medical Board shall evaluate a medical case, if the Department is required to pay for services rendered. This rule does not preclude a recipient from choosing a person holding a limited license to treat or render service to such recipient. All the rule provides is that the holder of a limited license may be authorized by the Department to render services to a recipient in only those instances when such services are recommended for that recipient by a physician holding an unlimited license or by the County Medical Advisory Board.

Counsel insist that this rule does not implement the statute but modifies it in an improper manner. The Department is not, by the statute, required to provide services to recipients because of illness or disability. All that the statute provides is that the Department may do so. Counsel argue that if the Department decides to provide services to recipients because of illness or disability, it cannot, by rule or regulation, discriminate against persons licensed to practice without the use of drugs or operative surgery; that such a practitioner, under the rules of the Department, does not have an equal status with the practitioner licensed to practice with the use of drugs or operative surgery, and for this reason, the rules and regulations of the Department are discriminatory, and therefore invalid. The Legislature, insists counsel, has determined that if the Department provides services for recipients because of illness or disability, then anyone licensed under the Medical Practice Act may provide such services, the only limitation being that the practitioner rendering the service must comply with his license.

In support of this argument, counsel refer to People v. Siman, 278 Ill 256, 115 NE 817, the only

case cited in their brief. That case does not hold, as counsel for Appellants argue, that under the Medical Practice Act no one segment of the healing arts is superior to any other segment. The opinion does state that a physician is one versed in or practicing the art of medicine, and the term is not limited to the disciples of any particular school, and that in common acceptation, anyone whose occupation is the treatment of diseases for the purpose of curing them, is a physician, and that this is the sense in which the term is used in the Medical Practice Act. What the court held, however, was that the word "physician," as used in the Vital Statistics Act, included osteopathic physicians and was not limited to any particular school of medicine.

It does not follow that because the Department provides recipients with medical services that anyone licensed under the Medical Practice Act may provide such services. It is true that the rule does provide that the cost of medical care given a recipient by a person with a limited license shall be paid only when the services are recommended by a person having a license to practice medicine in all its branches, or by the County Medical Board.

Pursuant to the provisions of the statute and the discretion vested in the Department, the Department adopted the rules and regulations complained of. No authority has been cited, and we are unable to find any which indicates that the Department unlawfully exercised the legislative power delegated to it by the statute. In our opinion, the rules complained of are not unreasonable, capricious or arbitrary.

The Circuit Court of Sangamon County correctly so held, and its judgment is affirmed.

Judgment affirmed.

REYNOLDS and WRIGHT, JJ., concur.